ORSON ADAMS, JR., ET AL. *v.* GEORGE LINK, JR., ET AL., EXECUTORS (ESTATE OF MILDRED A. KINGSMILL), ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 7—decided October 28, 1958

*Paul C. Jamieson,* with whom was *Stephen Pierson,* for the appellants (plaintiffs).

*Warren W. Eginton,* with whom were *Charles H. Buckley,* of the New York bar, and, on the brief, *George F. Lowman,* for the appellees (defendant executors).

*George W. Oberst* appeared for the defendant The New York Association for the Blind, and *Louis Weinstein,* assistant attorney general, appeared for the defendant John J. Bracken, attorney general, but neither of them argued the cause.

KING, J. The defendants Link and The United States Trust Company of New York are the executors and trustees under the will and codicil of Mildred A. Kingsmill, late of Darien. Mrs. Kingsmill left, as her sole heirs at law, two brothers, Orson Adams, Jr., and Alvin P. Adams, and a sister, Ethel A. Martin. This action grows out of, although it is distinct from, an appeal by Orson Adams, Jr., and Alvin P. Adams, two of the three heirs at law, from the admission of the will and codicil to probate.

In the view which we take of the case, only the right to terminate the trust created in paragraph sixth of the will need be considered. This paragraph disposed of the residue by a trust. It provided for the payment of the net income for life, in monthly or quarterly instalments at their written election, to Joan K. Pringle and Mayes M. Foeppel, neither of whom was an heir at law. At the death of the survivor, the trust was to terminate and distribution of the corpus was to be made to The New York Association for the Blind. In fact, Joan K. Pringle predeceased the testatrix, leaving Mayes M. Foeppel as the sole income beneficiary and entitled, under the terms of the trust, to the entire net income for life.

During the pendency of the appeal from probate, a so-called compromise agreement was entered into between Mayes M. Foeppel, party of the first part, The New York Association for the Blind, party of the second part, and the three heirs at law of the testatrix, parties of the third part. The agreement in effect provided that (1) the appeal from the admission of the will and codicil to probate would be withdrawn; (2) 15 per cent of the residuary estate, i.e. the trust corpus, would be paid outright to the three heirs at law in equal shares; (3) 37 per cent

would be paid outright to The New York Association for the Blind; and (4) 48 per cent would be paid outright to Mayes M. Foeppel less a deduction of $15,000 which would be used to establish a new trust, the precise terms of which are not material. Basically, it was for the education of a son of Alvin P. Adams, and upon completion of his education the trust would terminate and any unused corpus and interest would be returned to Mayes M. Foeppel. The compromise agreement was by its express terms made subject to the approval of the Superior Court. The defendant executors and trustees refused to participate in the agreement or to carry it out. The present action, the plaintiffs in which include all parties to the agreement except The New York Association for the Blind, which was made a party defendant, seeks in effect (a) the approval of the agreement by the Superior Court, and (b) a decree compelling the defendant executors and trustees to carry it out. Since the provision for The New York Association for the Blind was a charitable gift, the attorney general was made a defendant to represent the public interest, under the provisions of § 212 of the General Statutes. The court refused to approve the agreement, and from this action the plaintiffs took this appeal.

While the parties have extensively argued and briefed a number of questions, one basic proposition is dispositive of, and fatal to, the position taken by the plaintiffs. No corrections of the finding which could benefit them in this view of the case can be made.

The fundamental effect of the compromise agreement, if approved by the court, would be to abolish the trust. Our rule as to the right of the beneficiaries of a testamentary trust to have it terminated

has been set forth in a number of cases, including *Ackerman* v. *Union & New Haven Trust Co.,* 90 Conn. 63, 71, 96 A. 149; *DeLadson* v. *Crawford,* 93 Conn. 402, 411, 106 A. 326; and *Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640, 648, 7 A.2d 652. The rule has also in effect been applied to the right of the beneficiaries to terminate an inter-vivos trust. *Gaess* v. *Gaess,* 132 Conn. 96, 101, 42 A.2d 796. Here a testatrix, in her will, established a trust in admittedly clear and unambiguous language; she has now died; and the trust beneficiaries and the heirs at law have joined in a plan to set aside the trust and substitute a distribution of the testatrix' estate more to their liking. Such a testamentary trust may be terminated only by a decree of a court of equity, regardless of any stipulation by all parties in interest. *Peiter* v. *Degenring,* 136 Conn. 331, 336, 71 A.2d 87. Our rule as set forth in *Hills* v. *Travelers Bank & Trust Co.,* supra, is: Conditions precedent which should concur in order to warrant termination of a testamentary trust by judicial decree are (1) that all the parties in interest unite in seeking the termination, (2) that every reasonable ultimate purpose of the trust's creation and existence has been accomplished, and (3) that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result. "The function of the court [of equity] with reference to trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascertain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest only." *Hills* v. *Travelers Bank & Trust Co.,* supra; *Peiter* v. *Degenring,* supra. The underlying rationale of our rule is

the protection, if reasonably possible, of any reasonable, properly expressed, testamentary desire of a decedent. 3 Scott, Trusts (2d Ed.) § 337.

It appears that all the interested beneficiaries have joined in the agreement under consideration. For the purposes of this case only, we will assume, without in any way deciding, that the plaintiffs are correct in their claim that the defendant executors and trustees have no standing to attack the compromise. This assumption is permissible because the compromise was in terms made contingent upon court approval, and this approval could not be compelled by any agreement of the trust beneficiaries among themselves. *Peiter* v. *Degenring,* supra. Thus we may assume, without deciding, that the first condition precedent under our rule is satisfied. But see Loring, A Trustee's Handbook (5th Ed.) § 122 p. 316, § 123 p. 318. The second and third conditions precedent have not, however, been satisfied. The obvious objectives of the testatrix were to provide (a) an assured income for life for Mayes M. Foeppel, and (b) at her death an intact corpus for The New York Association for the Blind. In carrying out these objectives, the testatrix took two important steps. In the first place, the management of the trust corpus was committed to trustees selected by her and in whose financial judgment she is presumed to have had confidence. Secondly, expenditure of any principal by the life beneficiary was precluded. Taken together, these two steps would tend to achieve, and in all reasonable probability would achieve, the testatrix' two basic objectives. To abolish the trust and turn over a fraction of the corpus outright to the life beneficiary would be to enable her in a moment to lose the protection of the practically assured life income provided by the testatrix. The

two basic objectives of the trust's creation and existence were reasonable and commendable and cannot be fully accomplished prior to the death of the life beneficiary. *Peiter* v. *Degenring,* supra, 337; 3 Scott, op. cit., § 337.1, p. 2454. Obviously, had the testatrix intended to entrust the life beneficiary with the handling of any part of the corpus, she would have so provided by a simple, outright gift.

The plaintiffs attempt to avoid the impact of our rule by two main claims. The first is that since the protection accorded the life beneficiary could be lost by her voluntary alienation of the income or by its involuntary alienation through attachment or seizure under an order in equity, the testatrix could not have intended to protect the beneficiary. This amounts in effect to a claim that only a spendthrift trust is protected from termination by agreement of all interested beneficiaries. The case against termination under our rule is of course even stronger where a spendthrift trust is involved, as in *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 84, 61 A. 57. 3 Scott, op. cit., § 337.2. But the operation of our rule is not restricted to such trusts. The mere fact that the testatrix failed to provide the maximum possible protection for the life beneficiary by creating a spendthrift trust under the terms of what is now § 3195d of the 1955 Cumulative Supplement[1] does not warrant a conclusion that she intended no protection at all, so that we can consider that the trust no longer has any purpose. Id., p. 2454.

---

[1] Sec. 3195d provides a procedure for the attachment of such an unrestricted life estate as was here created, but further provides: "When any such trust shall have been expressly provided to be for the support of the beneficiary or his family, a court of equity having jurisdiction may make such order regarding the surplus, if any, not required for the support of the beneficiary or his family, as justice and equity may require."

There is no merit in the plaintiffs' claim that in *Peiter* v. *Degenring,* supra, there was a change in, or a relaxation of, our rule. The facts in that case were peculiar. The testator's brother was seventy-eight years old and under a conservator. The testator created a trust for the payment to the brother or his conservator of "so much of the income and principal of my estate as may be necessary for his support and comfort, using the income first." In other words, the beneficiary was given neither principal nor income except as necessary for his support and comfort. The parties stipulated that the brother owned personal estate the annual income of which was greatly in excess of his needs for comfort and support, that he had not been entitled to receive and had not received any money from the trust, and that there was no possibility that he would be entitled to receive any money from it at any time. The proposal of all interested parties was that the trust be terminated upon the payment to the brother of $10,000, which of course would be under the management of the conservator. We held that a decree terminating the trust could not be granted on any stipulation of the parties but only, if at all, upon the basis of facts found by testimony offered before the court, and that the trust should not be terminated "unless those facts clearly establish that no purpose it was designed to serve would be defeated or jeopardized." Id., 340. There is nothing in the decision inconsistent with our rule as set forth in the other cases cited by us. The *Peiter* case does hold that evidence may be offered of facts, not apparent from the provisions of the trust instrument itself, which, if proved, would warrant a conclusion that the trust does not serve a legal and useful purpose and should be terminated. Ibid. We also held in the *Peiter* case that if satis-

factory proof was made of the peculiar facts therein, it might warrant a conclusion by the court that in all reasonable probability the trust would remain inactive during the beneficiary's life and, if so, a termination might be ordered, as in the case of any useless trust. The *Peiter* case in nowise helps the plaintiffs here.

The case of *Johnson's Appeal,* 71 Conn. 590, 594, 42 A. 662, is also one wherein it was proven that facts extrinsic to the will made it impossible, as a practical matter, to carry out its terms. These facts were, in substance, that the estate had been distributed in good faith as intestate before any will was discovered; that several of the distributees were under conservators; that the funds distributed had in large part been spent by, or on behalf of, the distributees, so that as a practical matter it would be impossible to recover the funds distributed; and that some of the distributees were going to contest the admission of the will to probate. The actual holding of the case concerned only the scope of what is now, in amplified form, § 7016 of the General Statutes, empowering probate courts to authorize the settlement of disputed claims. The statute was held broad enough to authorize the Court of Probate to approve a compromise settlement of all disputes between all parties in interest, including the threatened appeal from the admission of the will to probate. *Johnson's Appeal,* supra, 595. The question of the effect of such a settlement on an outstanding life estate was neither considered nor discussed. The further questions decided were that the statute was broad enough to authorize approval of the compromise even though the parties to the settlement included (a) the administrator c.t.a. of the will and (b) the respective conservators of certain distribu-

tees. Under the present amplified wording of the statute, it is unlikely that the questions determined by the court would have arisen. It is implicit in the opinion that the facts might warrant a conclusion by the Probate Court that it would be impossible, practically speaking, to carry out the terms of the will, even though it was admitted to probate. See 3 Scott, op. cit., § 335. The threatened appeal from probate was an incidental consideration, unnecessary to the decision of the case.

The plaintiffs also claim that whatever the rule may be in cases involving no will contest, a more liberal rule applies where, as here, the termination of the trust is a part of the settlement of such a contest. Some support for this position may be found in cases cited in 3 Scott, Trusts (2d Ed.) § 337.6. The rationale of our rule as to the power to set aside or terminate a trust is not, however, such that its applicability would be affected by the mere fact that the motivation of a trust termination agreement is the compromise of a will contest. It is true that such contests are not infrequently compromised by agreements involving the transfer of legacies or devises, in whole or in part, by beneficiaries under the will. Where such gifts are alienable this is permissible, since no violence is done to the provisions of the will. But that is not this case. Here the provisions of the will itself are being drastically changed so as to abolish a trust contrary to our rule. This cannot be done. It follows that the court below was not in error in denying approval of the agreement. Indeed, it was the only decision which could properly have been made. This conclusion makes unnecessary the consideration of the other grounds of appeal.

There is no error.

In this opinion the other judges concurred.