CONNECTICUT BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF FRANK R. HURLBUTT) *v.* FRANK R. HURLBUTT, JR., ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 12—decided December 23, 1968

*Paul W. Orth,* for the appellant (defendant Mable W. Hurlbutt).

*Charles W. Page,* with whom, on the brief, was *Ralph C. Dixon,* for the appellees (named defendant et al.).

*Henry S. Robinson, Jr.,* appeared for the appellee (plaintiff).

KING, C. J.  On August 7, 1930, Frank R. Hurl-
butt, then of Charleston, West Virginia, as settlor,
established an irrevocable inter vivos trust, of which
the plaintiff bank is the trustee.  The terms of the
trust, in simplified form, material to the present
controversy, were that the law of Connecticut should
govern the validity and interpretation of the trust
instrument; that the settlor should receive the net
income for his life; that at his death the corpus of
the trust should be divided into three parts and a
spendthrift trust established for each of his three
children; and that, upon the death of the children,
the settlor's grandchildren, per stirpes, should ulti-
mately take their parents' share of the trust corpus.

Each of his children survived him.  At the time
of trial, Frank R. Hurlbutt, Jr., the eldest child,
was fifty years old, married, and a surgeon and
medical researcher living in Honolulu, Hawaii;
George W. Hurlbutt was forty-eight years old,
married, and a lawyer living in Woodbridge; and
(Mrs.) Carol Hurlbutt Brawley, the youngest child,
was forty years old and lived in Hartford with her
husband, who was a musician and conductor.  It did
not appear whether there were any grandchildren.

The settlor and his second wife, Mable W. Hurl-
butt, hereinafter referred to as Mrs. Hurlbutt, were
married on August 2, 1952.  On May 10, 1965, he
died at the age of seventy-five, a resident of Canaan,
leaving a will dated June 30, 1958, which was duly
admitted to probate.  Mrs. Hurlbutt, with whom the
testator had lived up to the date of his death, was
named in the will and qualified and is acting as
executrix.  In the will, certain tangible personal
property of a total value of about $600 was be-
queathed to the testator's children; it was pointed
out that the children had been provided for in the

irrevocable trust, and the residue, which amounted to almost the entire estate, was given to Mrs. Hurlbutt. The estate was inventoried at a little over $80,000, and claims allowed against it came to about $25,000, exclusive of an indebtedness to the commercial department of the plaintiff bank in the amount of about $20,000 for which the bank held, and at practically all times had held, adequate collateral. Approximately $25,000 of the estate's assets had come to the testator from the estate of his mother, who had died on January 25, 1965.

The present controversy arises out of what amounted to, and will be referred to as, a single letter, dated March 31, 1960, signed by each of the testator's three children and directed to the commercial and trust departments of the plaintiff bank, stating, in effect, that the signers authorized the bank, at their father's request, to agree with their father that, upon and after his death, the income from the trust might be applied to the payment of any and all loans and interest thereon due the bank which might remain outstanding at the settlor's death without resort to any collateral. It further stated that the purpose of the authorization was to enable the settlor to borrow from the plaintiff bank from time to time, with or without collateral, on the basis of the authority of the letter for the repayment of any such loans.

On March 31, 1960, the testator wrote J. H. Bartholomew, a vice-president of the trust department, asking the trustee to cooperate with him in amending the trust to provide for the "vesting" of the trust corpus in his children at the date of his (the settlor's) death rather than in his grandchildren, upon the death of their parents, as the trust provided. In the letter, he also claimed that under

paragraph tenth of the trust agreement this modification or amendment could be made. Paragraph tenth provided that "[t]he Donor shall not have the power to revoke this trust, but the Donor shall have the power, acting jointly with the Trustee, to amend any provision in this [trust] agreement with regard to the time when or manner in which income and/or principal shall be paid to the beneficiaries named in this agreement." The trustee, with the settlor's permission, sought the opinion of counsel on this request and was advised that "a court might rule either way" and that the trustee could not safely accede to the settlor's wishes without the protection of a court order. Although the settlor, who was a lawyer by profession, did not agree with the opinion and, in a letter to the trustee dated June 28, 1960, reiterated his claim as to the scope of amendment authorized in paragraph tenth, he made no effort to have the trustee institute a court proceeding.

On or about June 17, 1960, the settlor had delivered the children's letter to Noel Belcourt, a vice-president in the commercial department of the plaintiff bank, who in turn sent it to Mr. Bartholomew with a note stating "we understand that upon his [the settlor's] death the income from the irrevocable trust will be applied to his indebtedness and that it may take some time to liquidate the indebtedness from the income". On June 24, 1960, Mr. Bartholomew wrote the settlor that the letter would be filed for what it was worth in the event of his death but that it was not irrevocable or mandatory in any way and its efficacy would depend on whether a child chose not to "cancel" his authorization.

The trust department did not return the children's letter to the commercial department. No use

was made of the letter up to the time of the settlor's death, and practically all loans of the settlor were at all times adequately covered by marketable collateral. The settlor never entered into any agreement with the bank under the purported authorization of the children's letter and of course could enter into none except during his lifetime. Thus, the letter ceased to have any possible efficacy as an authorization at the settlor's death. The bank made no loans to the settlor in reliance on the purported authorization.

On June 25, 1965, after the settlor's death, Mr. Bartholomew wrote the three children, stating that the income of the trust would be paid to the children or as they directed and that, upon their "confirmation" of the letter, the trustee would follow their requests concerning the application of their trust income. Thereafter, by separate letters, respectively dated June 30, July 15 and August 16, 1965, each child purported to revoke the "authorization" of the letter of March 31, 1960, which, as already pointed out, by its own terms had ceased, at the settlor's death, to have any possible further efficacy as an authorization.

On July 21, 1965, Mrs. Hurlbutt, individually and as executrix, demanded, through her attorney, that the bank apply the income of the trust to the repayment of the $20,000 indebtedness, pursuant to the letter of March 31, 1960, and that the bank, as creditor, not liquidate the decedent's indebtedness by disposing of the collateral securing it.

Thereupon, the plaintiff, as trustee, instituted the present action. The complaint took the form of an application for advice, seeking answers to three questions:

"A. Should the plaintiff hold each of said shares

and deal with the income thereof as is provided in paragraph 3 of Clause Second of the Trust Agreement?

"B. Should the plaintiff use net income of said shares to pay the principal and interest of said debt of $20,500 owed by Frank R. Hurlbutt at his death to The Connecticut Bank and Trust Company?

"C. If the answer to question B be 'yes,' should the plaintiff use all of the net income of each of said shares until the death of the child of Frank R. Hurlbutt for whom such share is held or until the principal and interest of said debt have been paid in full, whichever first occurs?"

The parties defendant were the three children and Mrs. Hurlbutt, individually and as executrix. Each defendant admitted the allegations of the complaint. The three children, as defendants, pleaded as a unit and made claims as to the proper answers to be given to the aforesaid three questions. Mrs. Hurlbutt made such claims and also extensive allegations of fact on which issue was joined.

The case was tried in the Superior Court, and judgment was rendered in the affirmative as to question A and in the negative as to question B so that no answer to question C was required. In a supplemental memorandum of decision, counsel fees were denied except to the trustee. From the complete judgment, Mrs. Hurlbutt took the present appeal.

The single evidential ruling complained of, even if it was erroneous, was not shown to have been harmful, since the basic answer called for and excluded was otherwise obtained and is incorporated in the finding.

Mrs. Hurlbutt failed to show herself entitled to any of the additions to the finding which she seeks,

since they are nowhere shown to have been admitted or undisputed. Practice Book § 628 (a); *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634. Of course, the judge who tried the case cannot be bound, as to what he actually found, by any admission in a counterfinding (Practice Book § 615) of a fact claimed in a draft finding. Thus, no additions to the finding can be made on the basis of admissions in a counterfinding. *Humphrys* v. *Beach,* 149 Conn. 14, 20, 175 A.2d 363; *Wilson* v. *M & M Transportation Co.,* 125 Conn. 36, 42, 3 A.2d 309. Attacks on the finding, insofar as they were not corrected by the trial court, on the basis that the finding is in terms of doubtful meaning, either are not well taken or are immaterial to our disposition of the appeal. No deletions from the finding material to the disposition of this appeal can be made.

## I

Mrs. Hurlbutt seems to claim, on a number of grounds, that the trust was in some way amended or modified. The short answer is that she failed to prove that an amendment or modification was ever made.

## (a)

In the first place, there was no effective action taken under the reserved power of amendment or modification in article tenth of the trust agreement. The settlor considered such an amendment, but, after receiving the opinion of counsel that the trustee could not act on an amendment such as contemplated by the settlor without the protection of a court order, the settlor did nothing more about it, there was no attempt to obtain a court order, and

thus the ¹ ·st remained without amendment or modification ¹l his death.

### (b)

The rese.. ᵤu power of amendment was restricted "to the time when or manner in which income and/or principal shall be paid to the beneficiaries named" in the trust. The effect of the amendment which Mrs. Hurlbutt claims was made was to have the trust income paid to the settlor's estate instead of to the children as named beneficiaries. Any such amendment would necessarily have amounted to an outright change of beneficiaries, as far as the income involved was concerned, and patently would not have been embraced in, or authorized by, the above-quoted reserved power of amendment in article tenth.

### (c)

Except under the reserved power of amendment, the trust could not be amended or terminated, even without regard to its character as a spendthrift trust, without the consent of the settlor and all of the beneficiaries. Here, the grandchildren, born and to be born, were beneficiaries, and there is, and could be, no claim that they or any of them in any way consented to the claimed modification or amendment of the trust. While *Adams* v. *Link*, 145 Conn. 634, 638, 145 A.2d 753, was concerned with the termination of a trust, the same rule would apply to any amendment or modification of substance. Loring, A Trustee's Handbook (Shattuck Rev.) § 122, p. 314; Restatement (Second), 2 Trusts § 338 and comment h; 4 Scott, Trusts (3d Ed.) §§ 331, 338. Thus, there was, and could have been, no amendment or modification such as claimed by Mrs. Hurlbutt, even had it

been attempted, by any joint agreement of the settlor and the children in which the grandchildren did not participate.

## II

### (a)

The letter could not, as Mrs. Hurlbutt seems to claim, constitute an assignment. This is clear from its terms. It was directed to both the commercial and the trust departments of the trustee bank and purported to "authorize you, at the request of our . . . father, to agree with him that upon and after his death the income from said trust" may be applied to the payment of his indebtedness to the bank. This letter was obviously no assignment. It purported to authorize the trustee to make an agreement with the father, but, as already pointed out, no agreement was ever made.

### (b)

Mrs. Hurlbutt seems to claim some sort of estoppel based on the father's claimed reliance on the letter as an effective assignment. The court refused to find any such reliance, and that finding cannot be changed. Indeed, in the light of the information given the settlor by the trust department, immediately after he had delivered the letter to the commercial department, it is doubtful if a finding of reliance, had it been made, could have been supported.

### (c)

Mrs. Hurlbutt seems to make a claim that the commercial department of the trustee bank came to an agreement with the settlor as authorized in the children's letter.

This assertion in turn necessarily involves a claim that the letter from Mr. Belcourt of the commercial department was binding on the trust department. Such a claim is patently without merit even had the letter purported to bind the trust department. The trustee's fiduciary obligations were determinable by the Superior Court and could not be altered, modified, or set aside by extrajudicial actions on the part of the commercial department of the plaintiff bank which, in its trust department, was acting as trustee. Actually, of course, Mr. Belcourt realized this situation and sent the letter to the trust department, which, as previously pointed out, promptly notified the settlor of the inefficacy of the letter.

### III

What has already been said is sufficient to dispose of Mrs. Hurlbutt's claims without regard to the fact that, upon the death of the settlor, the trust became a spendthrift trust within the provisions of § 52-321 of the General Statutes. It was not a mere discretionary trust. *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 222, 27 A.2d 166. It was a spendthrift trust not only as to the life estates in the three children but also as to the estates in the grandchildren up until the termination of the trust and the distribution to them of any then-unexpended corpus. *Bridgeport* v. *Reilly,* 133 Conn. 31, 36, 47 A.2d 865; *Bridgeport-City Trust Co.* v. *Beach,* 119 Conn. 131, 141, 174 A. 308; *Carter* v. *Brownell,* 95 Conn. 216, 223, 111 A. 182.

As a spendthrift trust, the income could not be assigned or alienated by any of the beneficiaries. *Foley* v. *Hastings,* 107 Conn. 9, 16, 139 A. 305; *Bridgeport-City Trust Co.* v. *Beach,* supra; 2 Scott,

Trusts (3d Ed.) § 152.5. We reject Mrs. Hurlbutt's contention that such an alienation or assignment is permissible if it runs to the settlor or, as in this case, to his estate.

Of course, after the income has actually been placed by the trustee in the hands of the beneficiary, even of a spendthrift trust, he can spend it or give it away. Thus, in the instant case, nothing appears which would prevent the children from giving to Mrs. Hurlbutt, or to the commercial department of the bank for application on the decedent's loans, income from the trust which had actually been paid into their hands. 2 Scott, loc. cit.; Restatement (Second), 1 Trusts § 152, comment j. But until the income of a spendthrift trust has actually been paid over to a beneficiary, it is not open to assignment or alienation to anyone. The trustee has withheld and accumulated all income accruing since the settlor's death, pending the outcome of this proceeding, and as far as appears no income has come into the hands of the children.

Mrs. Hurlbutt makes much of the fact that the trustee had determined that the full net income be paid to the children and that no justification appeared for withholding any income from them under the discretionary powers of the trustee. From this argument she claims that the trust had actually ceased to be a spendthrift trust. This claim is without merit. The trustee is under a continuing duty during the running of this spendthrift trust to exercise a sound discretion in paying income or principal to the beneficiaries. Action in pursuance of this discretion must depend on the facts as they develop from time to time. Financial reverses could at any time come to one or more of the children. This development might require the trustee to make

advancements from principal or to withhold or pay out income. The duty of the trustee cannot be avoided by any expectations of the children, the settlor, or the trustee, held as of any given time, that all net income would thenceforth be paid to the children. Indeed, already there have been invasions of the principal. The spendthrift character of the trust must remain unchanged, and the children's interest must remain unassignable and inalienable regardless of their present financial situation. *Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640, 646, 7 A.2d 652. Taking as facts Mrs. Hurlbutt's entire offer of proof in connection with the exclusionary evidential ruling previously discussed as set forth in the finding as amended, her position would not be advantaged. The trustee has contemplated the advancement of further principal to the children, and it is not unlikely that, if the entire net income, over four or five years, were to be used in the payment of the settlor's $20,000 indebtedness to the bank, as Mrs. Hurlbutt wishes, the trustee, because of the diversion of income, would have to advance principal to at least some of the children. This advancement would, pro tanto, reduce a grandchild's interest in the trust. This shows the utter impropriety of attempted modifications of supposedly irrevocable trusts to the prejudice of successive beneficiaries and the necessity for the capacity and consent of all beneficiaries in order to permit such a proceeding. This is true whether the trust is a spendthrift trust or not. *Adams* v. *Link,* 145 Conn. 634, 638, 145 A.2d 753; 2 Scott, Trusts (3d Ed.) § 133; 4 Scott, op. cit. §§ 331, 338.

## IV

In short, there is no error in the court's answers to the reserved questions.

## V

There remains for consideration the court's refusal, in a supplemental judgment, to allow counsel fees and expenses to Mrs. Hurlbutt or to the children. Mrs. Hurlbutt claims that this refusal, as to her, was erroneous. Section 52-251 of the General Statutes authorizes the allowance of a reasonable sum for expenses and counsel fees to each of the parties to an equitable proceeding brought by a fiduciary seeking (1) the construction of a will or (2) the advice of the court as to the administration of an estate or trust under a will or trust instrument. The statute should be so construed as to limit it to proceedings fairly falling within its terms. So construed, it would not embrace the instant proceeding, which basically amounts to a claim for the payment of the income of certain beneficiaries of the trust to the estate of a prior, deceased, income beneficiary, not because of anything in the trust purporting to require such a payment but because of claimed transactions, extraneous to the trust instrument, between some, but not all, of the beneficiaries involved. The statute was never intended to require an estate or trust to pay for the prosecution of claims of the basic type involved in this proceeding, any more than for the prosecution of an ordinary antemortem or postmortem claim. Although on its face the proceeding took the form of a request by a trustee for advice, there was no error in the refusal of the trial court to extend the statute to embrace Mrs. Hurlbutt's expenses and counsel fees in litigating her claim or to the children's expenses and counsel fees in defending against it.

Had Mrs. Hurlbutt brought an action against the children and the trustee, the trustee would of course

have had the right to reimburse itself from the trust assets for the reasonable expenses of the defense of such an action. Upon this ground the court did make an allowance to the trustee for its reasonable expenses and counsel fees in this proceeding. No objection is made by anyone to this action of the court, and, even if an allowance to the trustee in this proceeding was technically erroneous as unauthorized by General Statutes § 52-251, it does not appear to have been harmful to anyone.

There is no error.

In this opinion the other judges concurred.