**ST. LOUIS UNION TRUST COMPANY, a corporation, Coexecutor and Trustee Under the Last Will and Testament of Eleanore G. Conant, Deceased, Dated July 22, 1964, Appellants,**

v.

**George K. CONANT, Jr., Individually and as Coexecutor of the Last Will and Testament of Eleanore G. Conant, Deceased, et al., Respondents.**

No. 56679.

Supreme Court of Missouri,
Division No. 2.

May 14, 1973.

Motion for Rehearing or to Transfer to Court
en Banc Denied June 11, 1973.

R. H. McRoberts, St. Louis, for appellants.

Dominic Troiani, Charles E. Gray, St. Louis, for respondents.

STOCKARD, Commissioner.

Eleanore G. Conant died on October 14, 1964. Her will, dated July 22, 1964, was admitted to probate. Mrs. Conant was survived by four children, one of whom was Josie C. Manternach who was named as beneficiary in a testamentary trust. Mrs. Manternach filed suit in the Circuit Court of St. Louis County to contest the will. After the trial commenced the case was continued from day to day while settlement negotiations were carried on, and on January 15, 1968, a settlement agreement was executed by or on behalf of all parties to the will contest suit.

## Terms of the Will

By her will the testatrix gave one-fourth of her residuary estate to her son, George Conant, Jr., outright. She gave $1,000 to her daughter, Frances Schieffelin, and one-fourth of her residuary estate to Mrs. Schieffelin's daughter, Ann Richards Gridley. She also created two trusts, each consisting of one-fourth of her residuary estate, the income from one to be paid to her daughter Eleanor Storrs during her lifetime, with the corpus thereof to be paid at her death to certain named grandchildren. The income from the other trust was to be paid to her daughter Josie C. Manternach for her lifetime, with eventual termination of the trust either at or after her death as hereafter set forth.

## Terms of Settlement Agreement

The settlement agreement provided that the will contest suit was to proceed to judgment *establishing the will*, and the judgment was to approve the settlement agreement as being "fair and reasonable and lawfully binding upon *all parties hereto and on all beneficiaries under said trust.*" (Italics added.) Paragraph 4 of the agreement provided that Mrs. Manternach and the trustee "hereby respectively renounce their rights and interests in or respect to said trust." Paragraph 3 of the agreement provided that she was to receive an amount, to be determined according to a formula therein set forth, of approximately $113,000 *free from the trust,* not payable from the estate before the residue was to be divided into four equal parts, but to be paid from the trust fund of which she was designated a life beneficiary. This would reduce the amount of the fund in the trust from approximately $170,000 (at time of trial) to approximately $57,000.

The settlement agreement further provided that the trustee should immediately file a "declaratory judgment suit or a suit for instructions * * * to determine the legality and binding effect of this settlement agreement, insofar as it provides for said payment (under paragraph 3 hereof)

to Josie C. Manternach free from trust, and further to determine the effect of the renunciations in paragraph 4 hereof contained on the rights of the beneficiaries * * * referred to in paragraph 1–C of Article III and in Article V of said will."

It was further provided that the "obligation of the parties under paragraphs 3 and 4" were to be subject to a final judgment being obtained in the suit for a declaratory judgment that "this settlement agreement is valid and binding upon all the parties hereto and on all beneficiaries, contingent or otherwise, under said trust." It was then provided that in the event a final judgment so providing was not obtained, "this settlement agreement shall be null and void as to all parties hereto, except for those provisions set forth in paragraphs 1 and 2 hereof." Those two provisions provided for the entry of the judgment in the will contest suit establishing the will, and that no appeal therefrom be taken or other contest be made.

The two persons who are appellants were not parties to the settlement agreement. In fact, one had not been born at the time the agreement was executed.

## The Suit for Declaratory Judgment

The suit for a declaratory judgment was filed by the trustee as provided for in the settlement agreement, and the two minors who are appellants herein were made parties-defendant and a guardian *ad litem* appointed to represent their interest. Thereafter, the court entered judgment in which it held: (a) the judgment in the suit to contest the will "is a valid and binding judgment on all parties and the terms of said judgment shall be forthwith carried out," (b) the settlement agreement and the judgment approving the settlement agreement "constitutes an effective renunciation by Josie Conant Manternach of her rights under the Will, therefore the trust created by paragraphs 1–C of Article III and Article V of the Last Will and Testament of Eleanore G. Conant, deceased, dated July

22, 1964, shall be administered by [St. Louis Union Trust Company] as Executor and Trustee as though Josie Conant Manternach had predeceased Eleanore G. Conant," and (c) the trustee shall forthwith pay to Josie C. Manternach free from the trust the amount provided for in the settlement agreement. It is from this judgment in the suit for a declaratory judgment that this appeal has been taken by two minor contingent beneficiaries.

### Jurisdiction

At the time the notice of appeal was filed this court had appellate jurisdiction by reason of the amount in dispute, and it retains jurisdiction for final disposition of the appeal. Mo.Const. Art. V., §§ 3 and 31, V.A.M.S., of the 1970 amendment.

### Appellants' Interest

The two appellants are great grandchildren of the testatrix. The will provided, as to the trust of which Mrs. Manternach was designated life beneficiary, that "If my daughter Josie Conant Manternach be living at the time of my death, or if either of her children Josie Manternach and Bruce Manternach, Jr. be then living and less than twenty-five (25) years of age, the trustee * * * shall hold and administer the same * * * and shall make payments from the trust property and finally distribute the same as hereinafter provided." At the termination of the trust the corpus is to be distributed to the children of the life beneficiary, Josie and Bruce, Jr., with Josie's share going to Bruce if she is not then living and left no living descendants, then his share is to be divided equally between Ann Richards Gridley and four children of George K. Conant, Jr., if then living, and "to the descendants of any of them then deceased, in equal shares per stirpes." Appellants are children of Ann Richards Gridley. In order for either to participate in the distribution of the corpus of the trust, at its termination, (a) Bruce Jr., must have previously died leaving no living descendants, and

(b) their mother, Ann Richards Gridley, must have previously died. However, the contingencies are not impossible of occurrence, and should the settlement agreement be carried out and the contingencies occur, the amounts payable to appellants will be reduced substantially.

### The Effect of the Judgment in the Will Contest Suit

Appellants contend that the trial court erred in ruling that that portion of the judgment in the will contest suit which approved the settlement agreement was valid because (a) the jurisdiction of the circuit court in a will contest suit is limited to the issue of whether the purported will was in fact the last will and testament of the testatrix, and (b) appellants were not parties in the will contest suit and were not parties to the settlement agreement.

Respondents urge that as contingent beneficiaries appellants were not necessary parties to the will contest suit, that they were in fact represented by their mother whose interest was the same as theirs and who executed the settlement agreement, and that that part of the judgment in the will contest suit which approved the settlement agreement and decreed it to be binding on contingent beneficiaries is not now subject to attack by appellants.

■ By the terms of the settlement agreement the issue of the "legality and binding effect" of its provisions calling for the payment to Josie C. Manternach free from trust was specifically reserved for determination in a separate suit for declaratory judgment to be subsequently filed. Therefore, when the judgment in the will contest suit approved the settlement agreement, and declared it to be fair and reasonable and binding on all beneficiaries, it did not decree that the payment to Mrs. Manternach of a portion of the trust funds was proper, or that interested persons could not question the proposed payment. At most it decreed that the beneficiaries were bound by the agreement which pro-

vided that the issue of the legality of the proposed payment be submitted for decision in a subsequent suit for declaratory judgment. In that suit appellants were named as defendants, a guardian *ad litem* was appointed to represent them, and they are interested parties with standing to appeal from the judgment entered by the trial court.

## The Legality of the Proposed Payment to Mrs. Manternach

To set forth with clarity the precise issue for determination, we shall restate some factual matters and note others. The testatrix created a trust fund of approximately $170,000 to be managed by the trustee, and the income therefrom was to be paid to Mrs. Manternach for her life. The trustee was authorized to invade the corpus of the trust for the benefit of the life beneficiary in the event of certain specified emergencies, and this was the only circumstance in which she was to receive any part of the corpus of the trust. The trust was also governed by what is known as a spendthrift clause, standard in form, which included the provision that "no beneficiary * * * shall have any power to give, grant, sell, assign, transfer, encumber, or in any manner to dispose of, all or any part of his or her interest in the trust property or in the income produced thereby."

The life beneficiary filed a suit to contest the will. If successful she would receive as heir, or as beneficiary of a prior will if established, an interest believed by her to be more advantageous than that under the challenged will. By a so-called family settlement all parties agreed that (a) the will contest suit should proceed to judgment *sustaining the will*, (b) the designated life beneficiary should renounce all her interest in or with respect to said trust, (c) the life beneficiary should be paid *free from trust*, an amount "from the assets of said trust" equal to approximately two-thirds of the trust fund, and (d) the renunciation and the payment to the life ben-

eficiary should be subject to a judgment declaring the payment to the designated life beneficiary free from trust to be legal and binding on all beneficiaries of the trust.

The general policy which favors the compromise of controversies and the avoidance or termination of litigation extends to suits to contest a will. Brandenburger v. Puller, 266 Mo. 534, 181 S.W. 1141 (1916); Annotation, 29 A.L.R.3d § 4 at p. 25. By a family settlement the beneficiaries under a will may agree to a distribution of the estate in a manner different from that prescribed by the will. Schoen v. Wagner, 231 S.W.2d 269 (Mo.App. 1950); Schoen v. Lange, 238 S.W.2d 902 (Mo.App.1951); Re Noble's Estate, 141 Kan. 432, 41 P.2d 1021, 97 A.L.R. 463 (1953); Brent v. McDonald, 180 Kan. 142, 300 P.2d 396 (1956); Davenport v. Sandeman, 204 Iowa 927, 216 N.W. 55 (1927); Annotation, 29 A.L.R.3d § 6 at p. 33. The reasoning back of this general rule is that "beneficiaries under a will may, immediately after the distribution, divide the property as they see fit and there is no reason why they may not make such division before they receive the property." Re Swanson's Estate, 239 Iowa 294, 31 N.W.2d 385 (1948). However, as stated in the Swanson case, "There are two exceptions to, or limitations upon, the rule permitting family settlements: (1) Beneficiaries under a will cannot defeat a trust. * * * (2) Such an agreement may not deprive one not a party thereto of his interest in the estate or prejudice the rights of nonconsenting creditors." See also Re Noble's Estate, supra; Re Harper's Estate, 202 Kan. 150, 446 P.2d 738 (1968); Re Mowinkel's Estate, 130 Neb. 10, 263 N.W. 488 (1935); Deal v. Wachovia Bank & Trust Co., 218 N.C. 483, 11 S.E.2d 464 (1940); Re Shearer's Estate, 346 Pa. 97, 29 A.2d 535 (1943); Brady v. Hanson, 68 Misc. 198, 123 N.Y.S. 645 (1910); Re Freiberger's Estate, 177 Misc. 592, 31 N.Y.S.2d 456 (1941); Annotation, 29 A.L.R.3d § 11 at p. 45. The basic reason for the exception

which prohibits the termination of a trust by a family settlement is that a testator has the right to dispose of his property by will with restrictions, and he may divide a bequest into an estate for life and an estate in remainder. When he does so by creating a trust for the benefit of one person with the remainder to others, no beneficiary has any right to immediate possession of the corpus of the trust, and having no such right he cannot by agreement create a transferable right. See Re Mowinkel's Estate, supra.

Notwithstanding the general rule which prohibits the destruction by agreement of a trust, there are some circumstances in which the beneficiaries of a trust may bring about its termination by agreement. For example, when the settlor and all beneficiaries agree, the trust may be terminated by court action even though the purpose of the settlor in establishing the trust has not been accomplished. Fowler v. Lanpher, 193 Wash. 308, 75 P.2d 132 (1938); Restatement Trusts 2d § 338. Also, when the purposes of the settlor have been accomplished or have become impossible of achievement or are illegal, the courts authorize the termination of a trust at the request of all beneficiaries. Bogert, Trusts & Trustees, 2d ed. § 1007; Annotation, 29 A.L.R.3d § 11[b] at p. 47. As stated in Restatement Trusts 2d § 336, "The beneficiaries of a trust, if all consent and none is under an incapacity, can compel its termination if the continuance of the trust is not necessary to carry out a material purpose of the trust, although the period fixed by the terms of the trust for its duration has not expired. On the other hand, even though they all consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust." In Bogert, supra, § 1008, it is stated that "The great majority of the American courts which have considered the problem of court termination of the trust at the suit of all beneficiaries have refused to grant the application, if they found that there were

purposes which the settlor had in mind in creating the trust which were capable of being achieved but had not been accomplished." It is also there pointed out that this is the rule even though the trust was not spendthrift in character if it had other objectives, but "obviously there is a stronger case against termination where the trust contains a spendthrift clause" which prohibits the alienation of the cestui's interest.

The problem here presented has previously received consideration by the courts of this state. In Hamilton v. Robinson, 236 Mo.App. 289, 151 S.W.2d 504 (1941), the testator created a trust for the benefit of his son for education and support until age twenty-one. At that time the son was to be paid $5,000, but the trust was to continue and the income from the remaining corpus was to be paid to the son until he reached the age of twenty-eight, at which time the trust was to terminate and the corpus to be paid to him. At age twenty-four the son sought to have the trust terminated, but the court refused, saying: "The language in the will here under consideration is clear, and the meaning thereof can admit of no dispute. * * * It cannot be questioned that a termination of the trust at this time would thwart the wish and intention of the testator."

In Thomson v. Union National Bank in Kansas City, Mo., 291 S.W.2d 178 (1956), a testamentary trust was created for the benefit of the testator's widow for her life with remainder to three sons. Permission of the court was sought by the sons and the life beneficiary to terminate the trust and create a trust with terms different from that specified by the testator. It was held that "What is proposed here would, of course, destroy this trust and defeat the explicit purposes so plainly stated in [the] will and the circumstances do not justify that result."

What is proposed in this case by the settlement agreement destroys the clearly stated purposes of the trust and the intent of the testatrix. Mrs. Manternach was not to receive any part of the corpus of the

trust, with one possible exception not material to the issue. Instead, she was to receive a guaranteed income for life, subject to the spendthrift clause, and the corpus of the trust was to be distributed at the termination of the trust without diminution, with the one possible exception, to certain named persons. In addition, those parties to the settlement agreement who are beneficiaries of the trust have violated the terms of the spendthrift clause which prohibits "any beneficiary" from transferring or disposing of any part of his or her interest in the trust property during the life of the trust. The purpose and intent of the testatrix in creating the trust is capable of being carried out. It is neither impracticable nor impossible. It certainly is not illegal. Whether the affected beneficiaries believe it was a wise disposition of her property by the testatrix is immaterial.

The proposed settlement would reduce the corpus of the trust to approximately one-third of its amount. Judicial approval of the settlement agreement would partially destroy and defeat the trust, violate the spendthrift clause, deprive persons not party to the agreement (and who are under the disability of infancy) of their potential participation in the trust estate, and defeat the intention and purpose of the testatrix by depriving her of her right to dispose of this part of her property by will with restrictions, where the purpose of testatrix is legal, has not been accomplished, and is possible of accomplishment. We note the language used in Adams v. Link, 145 Conn. 634, 145 A.2d 753 (1958), concerning a "family settlement," which in many respects is factually similar to this case. "To abolish the trust and turn over a fraction of the corpus outright to the life beneficiary would be to enable her in a moment to lose the protection of the practically assured life income provided by the testatrix. The two basic objectives of the trust's creation and existence [an assured income for the life beneficiary and an intact corpus for the remainderman] were reasonable and commendable and cannot be fully accomplished prior to the death of the life beneficiary. * * * Obviously, had the testatrix intended to entrust the life beneficiary with the handling of any part of the corpus, she would have so provided by a simple, outright gift."

Respondents argue that the settlement agreement was made in settlement of a suit to contest the will, and that trustee was granted broad powers to settle any claim against the estate or affecting the trust. The powers granted to the trustee are the traditional investment and management powers conferred upon trustees. They pertain to the administration of the trust as created by the testatrix. We do not consider them to authorize its destruction. In Adams v. Link, supra, it was there argued that the destruction of the purposes of the testamentary trust by the payment of a portion of the corpus to the life beneficiary should be permitted because it was the result of a "family settlement" terminating a suit to contest the will. It was held that "The rationale of our rule as to the power to set aside or terminate a trust is not, however, such that its applicability would be affected by the mere fact that the motivation of a trust termination agreement is the compromise of a will contest. It is true that such contests are not infrequently compromised by agreements involving the transfer of legacies or devises, in whole or in part, by beneficiaries under the will. Where such gifts are alienable this is permissible, since no violence is done to the provisions of the will. But this is not the case. Here the provisions of the will itself are being drastically changed so as to abolish a trust contrary to our rule." In this case the judgment of the court in the will contest suit *established the will* which created a trust with clearly expressed objectives and purposes which are capable of being carried out. If those who received alienable benefits under the will desired to transfer some or all, or the beneficiaries desired to transfer some of their own property in order to bring about a termination of the litigation, they could have done so. But, here the

"consideration" was from the corpus of the trust, which was not alienable if the will was established. In other words, the beneficiaries cannot receive the benefits of the will and also defeat the intent of the testatrix and the purpose of the trust.

Respondents also argue that some significance should be attached to the fact that the life beneficiary renounced the testamentary trust. She did so conditionally, and the condition was that she receive free from the trust two-thirds of the corpus. We attach no significance to this renunciation other than it was a part of the overall plan to defeat and destroy the intent of the testatrix, and to bring about a termination of two-thirds of the trust.

We conclude that the trial court erred in approving the settlement agreement and directing that the trustee pay to the life beneficiary, free from the trust, approximately two-thirds of the corpus.

### The Allowance of Attorney Fees

The Trustee, St. Louis Union Trust Company, appealed from that part of the judgment disallowing attorney fees, and assigned as error the refusal of the trial court to reserve jurisdiction to allow, and in ruling that it would not allow, attorneys fees and expenses (a) in obtaining advice and counsel "in connection with the negotiation of the settlement agreement in the will contest proceeding," and (b) in connection with the suit for declaratory judgment.

In the will contest suit the Trust Company was joined as a party defendant in its capacities as coexecutor and trustee, and it employed the law firm of Keefe, Schlafly, Griesedieck & Ferrell to represent it in that proceeding. That firm also represented other defendants and an agreement was entered into between those parties concerning the payment of attorney fees, which the trial court refused to enforce, but which is not in issue on this appeal.

When, during trial, the parties entered into negotiations which ultimately resulted in the execution of the settlement agreement, the Trust Company sought and received advice from the law firm of Bryan, Cave, McPheeters & McRoberts, · its general counsel, in connection with the proposed settlement agreement. The advice sought concerned "the propriety of [it] executing the settlement agreement," and it was advised that "the instructions of a court of equity would be required as to whether [it] could perform according to [the] agreement," and that if such instructions were not received and the trust company "went ahead and made the distribution called for in that settlement agreement [it] might be under some liability to contingent or present beneficiaries * * * of the trust under the will."

The trial court held that the services of the Keefe firm to the Trust Company in the will contest suit "were minimal by reason of [its] position as a mere stakeholder," and that no fees should be allowed to the Trust Company. We do not find a specific ruling concerning the fees to the Bryan firm, except the ruling that "to assess any attorneys fees incurred in the will contest suit against any of the trusts or against the amount payable to Josie C. Manternach * * * would be contrary to the provisions of the settlement agreement and the clear understanding of the parties prior to the execution thereof."

As indicated by the first point of the Trust Company on this appeal, the contention as to attorney fees and expenses, other than those pertaining to the suit for declaratory judgment is limited to those fees and expenses incurred by the Trust Company in the employment of the Bryan firm to obtain advice pertaining to the proposed settlement agreement. We conclude that the allowance to the Trust Company of the requested fees was properly refused.

The Bryan firm was consulted in connection with the proposed settlement

of the will contest suit, and ordinarily, in such a suit the parties directly interested and not the estate should bear the expenses of litigation. In re Soulard's Estate, 141 Mo. 642, 43 S.W. 617 (1897). The Trust Company was only a stakeholder and except as to the amount of fees as trustee it had no interest in the outcome of the suit. The Trust Company cites and relies on Murphey v. Dalton, 314 S.W.2d 726 (1958). It was there held that a trustee is entitled to hire counsel to render services reasonably necessary for the security, protection, and preservation of the trust property, or for the prevention of a failure of the trust. In this case, the services of the Bryan firm which were sought and obtained had nothing to do with the preservation of the trust. Instead, those services were personal to the trustee. They pertained only to the potential liability of the trustee in the event it entered into and participated in a proposed plan, not to preserve the trust, but to partially destroy it. The purpose of the advice was not to properly administer the trust according to its terms, but whether the trustee could without incurring liability join in a plan as a part of the settlement of a will contest suit which would defeat the intent and purposes of the trust. Such fees and expenses should not be borne by the trust, and the trial court did not err in refusing to allow the payment from the trust fund.

The Trust Company also contends it was entitled to an allowance of attorney fees and expenses in connection with the bringing and the prosecution of the pending suit for a declaratory judgment. The trial court held that no such fees and costs were allowable because they were "incurred in the furtherance of the will contest suit and the action was instituted and prosecuted pursuant to the settlement agreement."

It was provided in the settlement agreement that the Trust Company should bring the suit, but there was no mention of attorney fees and expenses or who should pay them. The Trust Company relies on the statement in Scott, Trusts 3d ed. § 188.4, as follows: "So also the trust estate should bear the expenses of judicial proceedings relating to the administration of the trust, as, for example, where the trustee applies to the court for instructions as to his duties or powers. Where the trustee properly brings or defends a proceeding for the benefit of the trust estate, he is justified in incurring such expenses as are reasonable for the purpose, including the expense of employing an attorney."

In this case, the attorney fees and expenses in bringing this suit were not incurred by the trustee in obtaining instructions from the court as to its powers or duties "relating to the administration of the trust," but were incurred in litigation brought about as a part of a proposed settlement of a will contest suit, and such litigation was in fact a part of the will contest proceeding. Therefore, the trial court correctly ruled that the fees and expenses were not properly chargeable to the trust.

The Trust Company argues that because the settlement agreement was silent concerning the payment of fees and expenses, it cannot be assumed that it was intended that counsel for the trustee should work without compensation or that it should pay the fees and expenses. We agree with this conclusion, but the obligation to pay those costs is personal to the parties to the settlement agreement, and as to who should pay is a matter of contract between them. The parties cannot agree that counsel fees and expenses be paid from the trust when not properly chargeable against it.

That part of the judgment approving the settlement agreement and authorizing the payment to Mrs. Manternach of the specified amount from the corpus of the trust of which she is life beneficiary is reversed; the remainder of the judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and LEVITT, Special Judge, all concur.