[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's complaint dated December 14, 1992. The various defendants filed answers on March 29, 1994, April 4, 1994, April 5, 1994, April 13, 1994 and April 19, 1994. This matter involves a "Qualified Terminable Interest Property" trust (QTIP Trust). The plaintiff is the trustee of the trust as well as the son of the settlor and a remainderman beneficiary of the trust. The defendants are the settlor of the trust, her three sons (including the trustee) and a grandson.
The settlor created a trust transferring real property located in Massachusetts to a trustee to hold for the benefit of the settlor's husband. The complaint alleges that the terms of the trust require the trust to continue for the lifetime of the settlor's husband, and during his lifetime the trustee was to pay over all the net income for the benefit of the settlor's husband. The terms of the trust specify that the trust was intended to qualify as a "qualified terminable interest property" trust under 26 U.S.C. § 2523(f)[1], which requires the donee spouse to retain a life interest in the property CT Page 6988 transferred. However, the terms of the trust indicate that upon the death of the settlor, the assets under the trust were to be distributed according to the settlor's husband's will, if the settlor's husband exercised a power of appointment, or in the event that the power was not exercised, the assets were to be distributed to the settlor's then living issue per stirpes. The complaint alleges that due to an omission in drafting, the term "settlor" was mistakenly substituted for the term "settlor's husband" in Article Three Paragraph B of said trust. The parties seek to admit evidence of the scrivener's error in order to reform the trust to provide for the distribution of the assets upon the death of the settlor's husband which occurred on March 14, 1992.
The settlor, Grace Upson, testified that this trust was created on the advice of her attorney in order to save money on federal and state estate taxes and on federal income taxes. She acknowledged her signature on page twelve of the trust document (Exhibit A). Mrs. Upson testified that it was her intent that the trust res would pass to her children upon her husband's death.
Attorney Mark Dost drafted the QTIP trust for the settlor. He testified that after the settlor's husband's death on March 14, 1992, a Massachusetts attorney pointed out to him the discrepancy in Article Three Paragraph B. Attorney Dost stated he advised Mrs. Upson and her husband on estate planning matters and in particular on the subject trust. He testified that it was his intent when drafting this trust to have it terminate on the death of the settlor's husband and not on the death of the settlor. He also testified that that was the intent of the settlor. Attorney Dost also stated that Article Three Paragraph B as it is presently written makes no sense when it is read in conjunction with the rest of the document.
 The function of the court [of equity] with reference to trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascertain what the donor directed the donee should receive and to secure to him the enjoyment of that interest only.
(Adams v. Link, 145 Conn. 634, 638, 145 A.2d 753 (1958). The CT Page 6989 Connecticut Supreme Court has "rigorously adhered to the rule that a valid trust should be protected against unauthorized change, alteration or termination by agreement on the part of the beneficiaries." Connecticut Bank Trust Co. v. Lyman,148 Conn. 273, 278, 170 A.2d 730 (1961). As the trust now reads, the assets shall pass on the death of the settlor, who is still alive, to her issue, per stirpes. The complaint alleges that the settlor has three children which are now alive and who also have children.
The complaint alleges that the trust, as written, does not comport with the intent of the settlor due to a mistake in drafting and the plaintiff seeks to admit evidence of the alleged scrivener's error. "The issue of intent as it relates to the interpretation of a trust instrument, however, is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent." Heffernan v. Freedman, 177 Conn. 476, 481,418 A.2d 895 (1979), citing Fabian v. Walsh, 134 Conn. 456, 459,58 A.2d 384 (1948). Nevertheless, the general rule is that,
 [i]n determining the terms of the trust, resort is had in the first place to the instrument, if any, under which the trust is created. . . . Where the instrument contains no express provision or where a provision is ambiguous or uncertain in its meaning, resort may be had to extrinsic evidence to determine the terms of the trust.
IIA Scott on Trusts, Fourth Ed. § 164.1. A similar rule applies in the construction of testamentary instruments. SeeConnecticut Junior Republic v. Sharon Hospital, 188 Conn. 1, 19,448 A.2d 294 (1982) (no parol evidence absent, inter alia, ambiguous or inconsistent provisions).
In the present case, the trust is ambiguous or inconsistent because it expressly attempts to create a QTIP trust in order to receive the beneficial tax treatment afforded by such a trust. See 26 U.S.C. § 2523. However, the provision of the trust at issue, as it is now written, provides that the donee's (the settlor's husband's) interest could be divested by the prior demise of the settlor — although this did not happen — at which point the assets would pass to the settlor's heirs, per stirpes. This provision is inconsistent with the express language of the trust, which expresses an intent that the trust was to be a QTIP CT Page 6990 trust and that the settlor's husband was to have a life interest in the assets, as is required for the favorable QTIP trust tax treatment.
In addition to ambiguity, parol evidence maybe admitted to determine the provision of the trust where the terms of the trust indicate a mistake in the drafting. 1 Scott on Trusts, supra, § 38, p. 404; Restatement (Second) Trusts, §§ 332, 333. The above discussion regarding ambiguity also applies to proof of mistake, because it appears from the terms of the trust that the ambiguity was the result of a mistake in drafting.
After hearing the evidence, the court finds that there was a scrivener's error and that it was the intent of the settlor and the attorney who drafted the document that the words on the first line of Article Three Paragraph B should have read and were meant to read "Upon the death of the settlor's husband" and not "Upon the death of the settlor" as it reads. The court grants the plaintiff's (trustee) request to reform Article Three Paragraph B to read in the first line "Upon the death of the settlor's husband". The court finds that pursuant to the terms of the Grace F. Upson Irrevocable Trust, dated December 13, 1991 that trust terminated on the death of the settlor's husband, J. Warren Upson, who died on March 14, 1992 and that the trust res should be distributed accordingly.
Judgment may enter accordingly.