Azadia **MAMOULIAN**, et al.,
Plaintiffs-Respondents,

v.

**ST. LOUIS UNIVERSITY**, et al.,
Defendants-Respondents,

Arthur Newman, et al.,
Movants-Appellants.

No. 68658.

Supreme Court of Missouri,
En Banc.

April 14, 1987.

As modified June 16, 1987.

Dissenting and Concurring and
Dissenting Opinions June 16, 1987.

Rehearing Denied June 16, 1987.

Susan H. Mello, St. Louis, for Arthur Newman, et al.

John L. Davidson and Charles E. Taylor, St. Louis, for Barnes Hosp.

Thomas C. Walsh, David S. Slavkin, Mark G. Arnold, Carroll J. Donohue and Donald W. Bird, St. Louis, for SLU.

BLACKMAR, Judge.

This is an appeal from an order denying appellants' Rule 74.32 motion to set aside a final order approving the compromise and dismissal of a will contest action. We granted transfer after the court of appeals issued an opinion dismissing the appeal.[1] We decide the case as on original appeal and conclude that the trial court's order of approval was not in compliance with the requirements of § 473.085, RSMo 1986. We reverse the order of the trial court denying appellant's Rule 74.32 motion and remand the case with directions.

Clara A. Drefs died on January 18, 1979, leaving as her sole heirs at law a sister, Azadia Mamoulian; the children of a predeceased sister, Martha Newman Cammack; and the descendants of a predeceased brother, Lewis Cloud Newman. A will and three subsequent codicils were admitted to probate in St. Louis County in February of 1979 and letters testamentary were grant-

ed to Mercantile Trust Company National Association.

The will and its codicils included several outright specific bequests to charities and persons unrelated to the testatrix. There was a bequest of $175,000 to a trustee, to pay an annual income of 6% of the net assets to decedent's sister, Azadia Mamoulian, who is a plaintiff in this case, with remainder after her death to St. Louis University. St. Louis University received a bequest of personal property and was the residuary legatee. The will also exercised power of appointment under a 1935 trust agreement in favor of St. Louis University. No provision was made for decedent's heirs except for Mamoulian's life income from the trust.

Mamoulian and Martha Cammack's children filed a timely will contest petition in the Circuit Court of St. Louis County pursuant to § 473.083.1.[2] The petition asked that the decedent be declared to have died intestate, which would have required distribution of decedent's estate in three equal parts to Mamoulian, the Cammacks, and the Newman descendants. See § 474.010. Named as defendants were the devisees, legatees, trustees and executor named in the will and codicils, the Attorney General of the State of Missouri, eleven descendants of Lewis Cloud Newman (including the appellants who are three of his sons), and the unknown and unborn heirs, grantees and successors of Clara A. Drefs. All eleven Newman descendants lived outside Missouri. They were served by registered mail or by publication in accordance with Rule 54.17, and receipts were filed showing service on nine of them, including the three appellants. An order of publication of notice was issued concerning four of the Newman descendants, including two whose registered letters were returned undelivered. None of the Newman descendants filed a responsive pleading. On December 31, 1980, plaintiffs filed a memorandum

---

1. We borrow from the opinion of Judge Simon for the Court of Appeals without the use of quotation marks.

2. All statutory references are to RSMo 1986.

dismissing all eleven of them. The circuit court's Minutes of Proceedings contained an entry on December 31, 1980: "Pltf's dismissal of Deft's as per memo filed."

On January 20, 1983, after extensive discovery but prior to trial, a settlement and release agreement was approved by the court pursuant to § 473.084, and the will contest was voluntarily dismissed with prejudice pursuant to § 473.083.8.[3] The court's order of that date also stated that the "Probate Division may proceed with the probate of said Estate." The parties consenting to the settlement and release agreement were Mamoulian, the Cammacks, St. Louis University, Mercantile Trust Company N.A., and the Boatmen's National Bank of St. Louis. None of the Newman descendants was a party to the settlement. The agreement provided that distribution would be made in accordance with the contested will and codicils and that, out of a partial distribution of $1,000,000, St. Louis University would pay $200,000 to Mamoulian, $200,000 to the Cammacks, and $200,000 to the plaintiffs' attorney.[4] St. Louis University was also required to distribute certain personal property to plaintiffs. In return, plaintiffs agreed to dismiss the will contest with prejudice and Mamoulian renounced the interest in the trust provided for her in the will. The settlement made no provision for any of the Newman descendants.

Appellants, who are three of the Newman descendants, filed a Rule 74.32 motion on September 26, 1983, seeking to set the order of approval and dismissal aside for irregularity.[5] The motion was overruled and this appeal followed.

The respondents argue that the appellants, having been properly dismissed from the suit, have no standing to file a Rule 74.32 motion or to appeal from the denial of the motion. A will contest is an action in rem. *Campbell v. St. Louis Union Trust Company*, 346 Mo. 200, 139 S.W.2d 935 (banc 1940). A person who has an interest in the res has the required standing to file a 74.32 motion. *See In re Estate of Sympson*, 577 S.W.2d 68 (Mo. App.1978).

The respondents claim that § 473.083.8, expressly empowers them to dismiss the Newman heirs as parties, and then to consent to dismissal of the will contest action. That section reads as follows:

> Any such action may be voluntarily dismissed, after the period of contest has expired, by consent of all parties not in default, at the cost of the party or parties designated, at any time prior to final judgment.

■ The specified conditions are present. The six-month period for filing a will contest had expired (§ 473.083.1), and the Newman heirs were in default for failure to file answers. (Rule 74.045). There is, furthermore, no conflict between § 473.083.8 and Rule 67.01, authorizing the voluntary dismissal of civil actions prior to the introduction of evidence. The statute simply adds additional requirements for will contest actions. It is not necessary to decide whether there is a distinction between the dismissal of the Newman heirs as parties and the dismissal of the suit. Whether they were parties or not, they were in default.[6] Had the contestants simply de-

---

3. The quotation in Judge Donnellys' opinion omits a pertinent part of the court's order, as follows:
   the Court hereby approves the terms and provisions of the Settlement Agreement and Release pursuant to Section 473.084, RSMo.

4. Contrary to Judge Donnelly's suggestion, there is no reason why an agreement pursuant to §§ 473.084 and 473.085 could not provide for distribution under the challenged will, followed by the extrajudicial payment by the takers under the will to the settlement beneficiaries.

5. Rule 74.32 implicitly authorizes a motion to set aside a judgment for irregularity, if filed within three years from the date of the judgment.

6. Appellants need not have been named as defendants in the will contest at the outset because they were not "necessary" parties. *Zimmerman v. Preuss*, 725 S.W.2d 876 (Mo. banc 1987).

cided to abandon their lawsuit the Newman heirs could not force them to proceed, and would have no occasion for complaint. They take a risk in leaving the suit entirely to their aunt and cousins.

The respondents, however, seek to go further, and argue that they may enter into a contract prior to the dismissal, looking toward dismissal of the suit and distribution under the will to the named devisees. They suggest that the probate division has no concern over what these devisees do with their bequests after they receive them, and that the agreed payments by the principal devisees to Mamoulian, the Cammack heirs, and their attorney need not be approved by the court pursuant to §§ 473.-084 and 473.083.8. They cite *St. Louis Union Trust Company v. Conant,* 499 S.W.2d 761 (Mo. banc 1973) and *In re Estate of Simmermon,* 601 S.W.2d 691 (Mo. App.1980). These cases approve the "family settlement" method of bringing will contest actions to termination, which was used before the 1980 enactment of §§ 473.084 and 473.085.

■ We reject the respondents' argument. The purpose of §§ 473.084 and 473.-085 is to provide a statutory method for the settlement of will contest actions in lieu of the legerdemain previously required. There is no reason to assume that the legislature intended that an alternate method of settlement, not authorized by any statutory language, be available. *In re Estate of Simmermon, supra,* strongly relied on by Judge Donnelly, shows by its express language that it was decided prior to the effective date of §§ 473.084 and 473.-085, and it is no longer authoritative. The power to dismiss the action pursuant to § 473.083.8 (adopted in 1973) does not comprehend the power to enter into a settlement without complying with the new statutory requirements.[7]

Appellants contend that the procedural requirements imposed by § 473.085, for the compromise of a will contest were not met, in that the respondents neither obtained the Newman heirs' consent to the written compromise proposal nor notified them of it. Section 473.084 [8] permits such a compromise as follows:

A compromise of any controversy as to admission to probate of any instrument offered for probate as the will of a decedent, * * * if approved in a proceeding in the court for that purpose, is binding on all the parties thereto, including those unborn, unascertained, or who could not be located.

Section 473.085 [9] then sets out the requirements for securing approval of the compromise. Subsection (1) mandates that:

The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons and parents acting for any minor child having beneficial interests or having claims which will or may be affected by the compromise.

When §§ 473.084 and 473.085 are read together, they reveal a purpose of allowing all competent parties with beneficial interests to settle the controversy without the input of "personal representatives, testamentary trustees, and others who may have a vested interest in keeping the controversy alive." 4 F. Hanna, *Missouri Practice—Probate Code Manual,* p. 82 (1986). This is consistent with the purpose of the revised probate code, in facilitating settlements. *Cf. In re Estate of Basler v. Delassus,* 690 S.W.2d 791 (Mo. banc 1985).

---

**7.** Judge Donnelly makes puzzling reference to what he perceives as *obiter dictum* in the principal opinion. It no doubt would not be necessary to discuss §§ 473.084 and 473.085 if his theory of the law were adopted, but we have rejected that theory in holding that those statutes are applicable.

**8.** This section is identical to § 3–1101 of the Uniform Probate Code except that the UPC provision uses the terms "formal probate" and "formal proceeding in the Court."

**9.** This section is also identical in all substantive respects to its UPC counterpart, § 3–1102.

This interpretation is supported by the Comment to the Uniform Probate Code[10] which states that:

> [t]his section and the one preceding it outline a procedure which may be initiated by competent parties having beneficial interests in a decedent's estate as a means of resolving controversy concerning the estate.
>
> \*    \*    \*    \*    \*    \*

The thrust of the procedure is to put the authority for initiating settlement proposals with the persons who have beneficial interests in the estate, and to prevent executors and testamentary trustees from vetoing any such proposal. The only reason for approving a scheme of devolution which differs from that framed by the testator or the statutes governing intestacy is to prevent dissipation of the estate in wasteful litigation. Because executors and trustees may have an interest in fees and commissions which they might earn through efforts to carry out testator's intention, the judgment of the court is substituted for that of such fiduciaries in appropriate cases.

Uniform Probate Code § 3–1102 comment (1969).

■ Thus, even though the appellants may have an "interest" in maintaining the contest to its conclusion with the hope that they may recover under the state's intestacy provisions by invalidating the will, the history of the statutory language persuades us that non-parties to a will contest action, or parties in default, were not intended to have any right of participation in the settlement negotiations or in the execution of the written compromise proposal. This conclusion is consistent with a purpose of encouraging settlements, for, unless the active parties have the sole authority to reach a settlement, compromise may be virtually impossible. The authority conferred on the active parties to bind others besides themselves is highlighted by the provision of § 473.084, making the approved compromise binding on parties "unborn, unascertained, or who could not be located."

The power to compromise, however, does not carry with it the unconditional right to settle the suit for a consideration moving only to the active parties, to the exclusion of others who are similarly situated as heirs of the decedent. A will contest is unlike other civil suits, which plaintiffs may pursue in their own interest and settle for their sole benefit as they see fit. If the purpose of the contest is to establish intestacy, and it is successful, then the estate must be distributed among all of the heirs at law, whether or not they are parties to the contest. In an alternative situation, the contestants may seek to void the will which was admitted to probate and to establish an earlier will. If they are successful, distribution is made to all devisees, including those who do not participate ·in the contest. Unless all potential contestants join, those who maintain a suit of either type necessarily represent others besides themselves. The only possible favorable judgment they could obtain inevitably impacts and benefits these others.[11] In a like manner, the appellants are bound by the order dismissing the will contest, since the time for launching their own contest has expired. This is empirically so, notwithstanding the provisions of §§ 473.083.3 and 473.084.[12]

---

**10.** Official Comments to uniform laws adopted by the legislature, though not controlling, are a persuasive aid in determining legislative intent. *Groppel Co. v. U.S. Gypsum Co.,* 616 S.W.2d 49, 57 n. 7 (Mo.App.1981).

**11.** *Barney v. Suggs,* 688 S.W.2d 356 (Mo. banc 1985), relied on by respondents, is distinguishable because the default judgment entered there was one which the sole plaintiff could have obtained for herself if the suit had gone to trial.

**12.** Section 473.083.3 states that "persons not joined as parties in a will contest are not bound by the result thereof." Similarly, § 473.084 provides that an approved compromise of a will contest is "binding on all parties thereto...."

■ Prior to the 1973 amendment of § 473.083, which added what is now subsection 8, a will contest could not be dismissed voluntarily. The filing of the contest vacated the probate of the will, and it could be reinstated only by probate in solemn form in circuit court. *Cash v. Lust*, 142 Mo. 630, 637, 44 S.W. 724, 725 (1898); *McCrary v. Michael*, 233 Mo.App. 797, 109 S.W.2d 50 (1937). Even after this statute was changed to allow voluntary dismissal, compromise of a will contest was not recognized by statute prior to the enactment of §§ 474.084 and 474.085 in 1980. The contest, then, could be compromised only by a side agreement or "family settlement" as described in *St. Louis Union Trust Company v. Conant, supra*, and *In re Simmermon, supra*, to which the courts maintained a posture of struthious ignorance. Under the prior statutes the problem presented by this record would not exist, because the respondents could neither cause the suit to be dismissed nor enter into a court approved settlement. The addition of §§ 473.084 and 473.085 simplified the procedure, but the present statutes do not, expressly or by fair construction, give the active contestants the power to settle the case for their sole benefit to the exclusion of others who stand in the same position. We conclude that they do not have this power.

Our conclusion is consistent with the notice given to the appellants in the summonses served on them, in which they were told that they were required to file answers within the time specified, or face the possibility that default as prayed in the petition might be entered. Such a judgment would be clearly in their interests. They had the right to assume that no action on their part was required and that they would fare as well as their cousins who were prosecuting the suit. There is want of equity if the cousins obtain benefits from the suit while the appellants get nothing. *Cf. State ex rel. Eichorn v. Luten*, 515 S.W.2d 857 (Mo. App.1974); 561 S.W.2d 435 (Mo.App.1978).

■ The contestants suggest that they have had the sole burden and expense of the suit, whereas the appellants have contributed nothing and seek to reap where they have not sown. There is no reason why a proposed compromise could not appropriately make an allowance to the contestants for expenses and attorneys' fees. *Cf. Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 936 (Mo. banc 1960); *Jourdan v. Gilmore*, 638 S.W.2d 763, 768–69 (Mo.App.1982) (party who incurs costs in preserving a fund for the benefit of himself and others is entitled to recover his expenses from the fund).

■ Thus, while the consent of the appellants to the proposed compromise is not required, their interests must be taken into consideration in any proposed settlement. The circuit court must not approve a compromise which fails to do this. Support for this view of the lower court's role in evaluating the proposed compromise is found in § 473.085 which directs the court to determine whether the "effect of the agreement upon the interests of persons represented by fiduciaries or *other representatives* is just and reasonable." (Emphasis supplied). While the contestants may not be fiduciaries for the appellants, they are inherently "representatives," as that term is used in the statute. There is no warrant in the statutory language or in the authorities cited for limiting the term as the partial dissent would.

An analogy is found in Rule 52.08, governing class or representative suits. These suits may not be dismissed or settled without the consent of the court, and notice of a proposed settlement must be given to the represented parties. Although this rule does not govern will contest actions, it finds its origin in the equitable principle that a litigant who functions in a representative capacity may not exclude represented persons from a settlement. That principle is equally applicable here. A will contestant has standing only as a member of a class, whether of heirs or devisees.

The appellants, pursuant to § 473.-085(3), RSMo 1986,[13] were entitled to notice of the proposed compromise and of the proceedings for its approval. After the proposed agreement of compromise is submitted to the trial court under § 473.085(2), subsection (3) provides that notice is to be given "to all interested persons or their representatives, including the personal representative of the estate and all affected trustees of trusts * * *." Appellants come within the general definition of "interested persons" in § 472.010(15), RSMo 1986, reading as follows:

"Interested persons" means heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee. This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved.

We see no reason why the particular purpose of § 473.085(2) requires a different definition of the defined term. Section 473.085(3) is designed to ensure that all beneficially interested or affected persons who were statutorily removed from the compromise negotiations and execution described in subsection (1) are given appropriate notice so that they may be heard in support of their own interests or interests they represent. Even though we have held that the appellants could not have been involved initially in the settlement process, their concerns and interests are no less important than those of other persons, such as the executors and trustees, who may have merely an interest in fees and commissions to be earned by carrying out the testator's intentions. Section 473.-085(3), therefore, requires notice of the settlement proposal and pending proceedings to those persons listed in the statutory definition of § 472.010. Moreover, because the circuit court must determine whether the settlement is "just and reasonable" from the standpoint of all heirs, notice to those in the position of these appellants is essential so that they may make their views on reasonableness known to the court.[14]

Because no notice was given to the appellants, the order of the trial court approving the compromise and dismissing the suit was irregular. The order appealed from is reversed. The case is remanded with directions to sustain the motion under Rule 74.32, to set aside the order of approval and dismissal, and to entertain such further proceedings consistent with this opinion as may be necessary.

HIGGINS, C.J., and BILLINGS, ROBERTSON and RENDLEN, JJ., concur.

DONNELLY, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

---

**13.** Section 473.085(3) reads as follows:
After notice to all interested persons or their representatives, including the personal representative of the estate and all affected trustees of trusts, the court in which the controversy is pending, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable, shall make an order approving the agreement and directing all fiduciaries over which it has jurisdiction to execute the agreement. Minor children represented only by their parents may be bound only if their parents join with other competent persons in execution of the compromise. Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement.

**14.** The statute does not specify the method for giving notice. 4 Hanna, *Missouri Practice—Probate Code Manual*, p. 83 (1986), suggests notice in compliance with Rule 54.

DONNELLY, J., withdraws opinion previously filed and files dissenting opinion.

WELLIVER, J., withdraws opinion previously filed and files dissenting opinion.

DONNELLY, Judge, dissenting.

Clara A. Drefs died on January 18, 1979, leaving as her sole heirs at law: a sister, Azadia Mamoulian; the children of a predeceased sister, Martha Newman Cammack; and the descendants of a predeceased brother, Lewis Cloud Newman. A will and three codicils were admitted to probate in the Probate Court of St. Louis County on or about February 14, 1979. The principal beneficiary is St. Louis University. On May 15, 1979, Azadia Mamoulian and Martha Cammack's children filed a will contest petition in the Circuit Court of St. Louis County pursuant to § 473.083.1, RSMo 1986. The petition requested that Clara be declared to have died intestate, which would have required distribution of her estate in three equal parts to Azadia, the Cammacks, and the Newman descendants. § 474.010, RSMo 1986. All eleven Newman descendants were sent a copy of the summons and petition by registered mail. Signed return receipts were filed showing service on nine of the Newman descendants, *including the three appellants.* The registered letters to the other two were returned undelivered. An order of publication of notice was issued concerning four of the Newman descendants, including the two whose registered letters were returned undelivered. No Newman descendants filed a responsive pleading. On December 31, 1980, plaintiffs filed a memorandum dismissing as to all eleven of the Newman descendants. The Trial Court's Minutes of Proceedings contained an entry on December 31, 1980: "Pltf's dismissal of Deft's as per memo filed."

On January 20, 1983, a settlement and release agreement was executed. The parties to the settlement and release agreement were Azadia Mamoulian, the Cammacks, St. Louis University, Mercantile Trust Company N.A., and the Boatmen's National Bank of St. Louis. The Newman descendants were not parties to the settlement. The settlement provided that the will and codicils would be probated pursuant to their terms, and that St. Louis University would pay $200,000 to Azadia Mamoulian, $200,000 to the Cammacks, and $200,000 to plaintiffs' attorney. St. Louis University also agreed to transfer certain personal property to plaintiffs. In return, plaintiffs agreed to dismiss the will contest with prejudice, and Azadia Mamoulian renounced her interest in the trust provided for in the will.

On January 20, 1983, the Circuit Court of St. Louis County entered its order which reads, in pertinent part, as follows: "The Court hereby accepts plaintiffs' voluntary dismissal of this action with prejudice pursuant to Section 473.083.8, RSMo., and orders that this action is dismissed with prejudice, costs in this action to be taxed against St. Louis University."

Appellants, Arthur Newman, John Newman and David Newman, filed a Rule 74.32 motion on September 26, 1983. It was denied.

The principal opinion holds that there was a failure of compliance with §§ 473.084 and 473.085, RSMo 1986, and reverses and remands with directions to sustain the Rule 74.32 motion. In my view, reliance by the majority on §§ 473.084 and 473.085 is misplaced and its discussion of §§ 473.084 and 473.085 is *obiter dictum.*

There are now three methods available for disposition of the will contest: (1) judgment after hearing under § 473.083.7; (2) voluntary dismissal under § 473.083.8; and (3) approval of settlement under §§ 473.084 and 473.085. *See* Moffitt, *Terminating Will Contest Litigations,* 30 St. Louis Bar

J., 19, 22–23 (1984). When a will contest is dismissed under § 473.083.8, the case goes back "to the probate division for it to proceed with the administration of the estate * * * in accordance with the terms of the will * * *." *In re Estate of Simmermon v. Harris,* 601 S.W.2d 691, 692 (Mo.App. 1980). When a compromise is approved under §§ 473.084 and 473.085, it goes to the probate division for it to proceed with the administration of the estate in accordance with the terms of the compromise and not in accordance with the terms of the will. An agreement for dismissal under § 473.083.8 may be consummated "by consent of all parties not in default" and is enforceable as between them but it may not effectuate a variance from the terms of the will. A compromise under §§ 473.084 and 473.085 does contemplate a variance from the terms of the will and is subjected to additional constraints.

The majority errs when it deals with the constraints of §§ 473.084 and 473.085 in this case because the Settlement and Release Agreement executed January 20, 1983, was never intended to effectuate a variance from the terms of the will and its codicils.[1] The agreement expressly provides:

> WHEREAS, the parties hereto are desirous of settling and compromising their disputes, claims and causes of action which Plaintiffs have or may have, and that the Will will be probated in the Circuit Court of St. Louis County, Missouri, Probate Division pursuant to the terms thereof.

In sum, appellants were in default after the period of contest of the will had expired. By consent of all parties not in default, the will contest suit was dismissed under § 473.083.8 for settlement between the parties after partial distribution under the terms of the will and its codicils.

I would affirm and remand with directions to proceed under the terms of the will and its codicils.

I respectfully dissent.

WELLIVER, Judge, dissenting.

I withdraw my prior filed opinion Concurring in Part and Dissenting in Part and I now respectfully dissent. The majority opinion fails to recognize that only §§ 473.084 and 473.085, RSMo 1986,[1] have counterparts in the Uniform Probate Code, 8 U.L.A. (1983). Section 473.083, is a section unique to Missouri probate law. The abortive attempt of the principal opinion to either blend or blur these three sections makes possible use of the Probate Court for the commission of and legitimization of double-barreled fraud, *i.e.,* defrauding one-third of the heirs of their part of the so-called settlement, and, thwarting the intent of the testatrix to the extent of over $600,000.

Originally, I concurred in that part of the principal opinion which blends the three statutes and finds in § 473.085 a duty to give notice to the appellant Newmans of the fact that the Mamoulian and Cammack heirs had dismissed their petition against them. However, upon rereading the principal opinion and the Dissent of Donnelly, J., I concluded that, on the authority of these opinions, all that would happen would be that the Newmans would come into court after notice and be told that they are in "default" and are now legally and properly dismissed from the action and that they should return to their homes because their time for contest has expired. It has always been my understanding that the law should not do exercises in futility.

The first thing that must be determined in this case is what kind of a beast is the order entered by the circuit court. Is it a

---

**1.** All statutory references herein are to RSMo 1986, unless otherwise indicated.

dismissal under § 473.083, or, is it a settlement under §§ 473.084 and 473.085, in accordance with the so-called modern concept of the Uniform Probate Code, or, can it be both. The order appears to be a voluntary dismissal of the action with a purported settlement agreement appended and attached thereto and approved by the circuit court.[2]

In my opinion, the circuit court order and attached purported settlement agreement only are, and only can be, an attempted dismissal of the action pursuant to § 473.-083.9. The majority, however, would blend or blur the so-called settlement and the dismissal and my brother Donnelly, J., would close his eyes to the purported settlement's very existence. I submit that doing either makes our probate process a party to fraud. Under appropriate circumstances you can dismiss the action, or, you can file a settlement agreement, but, under these circumstances you cannot do both. *See Terminating Will Contest Litigation,* 30 St. Louis B.J. 19 (1984). The Uniform Probate Code concept of permitting rewriting the will under § 473.084 and 473.085 is totally inconsistent with the concept of dismissing the will contest and proceeding with probate of the original will as required by § 473.083.9.

Let us examine what you are authorized to do under § 473.083, as far as dismissals are concerned. At no place in § 473.083 is it suggested that anyone can dismiss part or some of the parties to the will contest. Under subsection 6, provision is made for dismissing plaintiffs' petition if all parties are not served in 90 days, unless good cause be shown. Subsection 6 sets a limit on how much you can stall probate by the filing of will contests. Subsection 8 provides "[a]ny such *action* may be voluntarily dismissed, after the period of contest has expired, by consent of all parties not in default, at the cost of the party or parties

designated, at any time prior to final judgment." § 473.083.8 (emphasis added).

The *action* may be voluntarily dismissed, not some or part of it, and not some of the parties, who in this case are nominal defendants having a common interest with the plaintiffs.

> If the *action* is dismissed under the provisions of subsection 6 or 8, the judge of the probate division shall proceed with the administration of the estate in accord with his previous order admitting the will to probate or rejecting a will as if the petition had never been filed with the clerk of the circuit court.

Section 473.083.9 (emphasis added).

Clearly, the dismissal contemplated must be either a subsection 6 or subsection 8 dismissal, after which you are required to proceed to probate the original will, not rewrite it. Clearly, the Newmans, who have a common interest with the other plaintiffs, must consent to dismissal of the action and they were not properly dismissed by the secret, partial, purported dismissal.

In my opinion, the Newman heirs, who were made parties defendant by the plaintiffs, Mamoulian and the Cammack heirs, were not in fact in default. The petition said that the Newmans had exactly the same interest in the outcome of the will contest as did the plaintiffs and that they were made defendants only because they had declined to be joined as plaintiffs. Rule 52.04. The true defendants, with an adverse interest to the plaintiffs, could possibly "default," as we know the word, thereby admitting the allegations of the plaintiffs' petition. There was no way that the Newmans, named only as nominal defendants, could default to the plaintiffs. They had not, I admit, filed an answer,

---

**2.** See order and appended settlement attached and appended as Exhibit A.

which is the ordinary method of defaulting to an adverse plaintiff. If the plaintiffs prevailed, the Newmans still would share their one-third of the estate. §§ 474.010 and 474.020. This is a probate proceeding where the ultimate goal of the court is to give effect to the intent of the testatrix. It matters not a whit whether the Newmans answer or not.

I know of no requirement in the law that "nominal defendants," having the same interest as the plaintiffs, are required to plead. They are joined only because they will be barred by the final judgment, whether they stay in or not. The only pleading or "answer" they could file would be to answer "I agree with plaintiff's petition," which adds absolutely nothing to the final outcome of the action. And, it is not the policy of the law to require futile actions. While I find no case directly on point, treatment of "nominal defendants" in other respects suggests no necessity for answers or pleadings.

When a party who otherwise would be a plaintiff is joined as a defendant under Federal Rule of Civil Procedure 19, which is substantially the same as our Rule 52.04, the federal courts must "look beyond the pleadings and arrange the parties according to their sides in the dispute" in order to determine diversity of citizenship. *City of Dawson v. Columbia Ave. Savings Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). "The generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3607 (1984), citing *Hamer v. New York Railways Co.*, 244 U.S. 266, 37 S.Ct. 511, 61 L.Ed. 1125 (1917). The nominal defendant has also been deemed a plaintiff for the purpose of determining venue. *Donohoe v. Wooster*, 163 Cal. 114, 124 P. 730 (Cal. 1912); Comment, *Compulsory Joinder of*

*Unwilling Plaintiffs in Civil Actions*, 25 Mo.L.Rev. 63 (1960).

[The plaintiff joined as a defendant] must take one of two positions—either that he wishes to participate with the plaintiffs in such recovery as may be had against [the actual defendant], or that he does not desire any benefit from the action. In either view his attitude will be substantially that of a plaintiff. In the one case that of a plaintiff asserting his right to recover; in the other, that of a plaintiff who waives such rights.

It is apparent, therefore, that *it is only in a narrow and technical sense that it can be said that the complaint states a cause of action against [the plaintiff made a defendant]*. While he was properly made a party defendant ... the plaintiffs cannot on the facts alleged obtain any relief against him. Nor can his action in asserting or waiving a right to participate in the recovery affect the rights which the plaintiffs are here attempting to assert against [the actual defendant].

*Donohoe*, 124 P. at 731 (emphasis added).

Clearly, in a will contest only adverse, not nominal defendants can default. These nominal defendants were never in default.

We now turn to the settlement agreement contemplated by §§ 473.084 and 473.085. There could be no dismissal against the nonadversarial Newmans who were denominated as nominal defendants because they did not choose to join as plaintiffs.

The terms of the compromise shall be set forth in an agreement in writing which shall be *executed by all competent persons* and parents acting for any minor child having beneficial interests or having claims which will or may be affected by the compromise. Execution is not required by any person whose identi-

ty cannot be ascertained or whose where-abouts are unknown and cannot reason-ably be ascertained.

Section 473.085.1 (emphasis added).

It further provides:

*After notice to all interested persons* ... the court in which the controversy is pending, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the inter-ests of persons represented by fiduciar-ies or other representatives is just and reasonable, shall make an order approv-ing the agreement. . . .

Section 473.085.3 (emphasis added).

Three things are clear. "All interested persons" must have notice, all "interested persons" must sign the settlement agree-ment, and the agreement must be approved by the court as fair and reasonable. Cer-tainly, no probate court should either close its eyes to or approve an agreement for distributing property in any manner other than provided by the will. § 473.083.9. To hold otherwise would require this Court and the Probate Court to approve doing after probate that which could not be done in the probate. It would in fact make this Court and the Probate Court parties to defrauding the testatrix' intent that St. Louis University should have her property. The second barrel of the fraud, if the courts approve the purported settlement, would be approving cutting out the New-mans. If the will contest prevailed, the Newmans would get their full one-third share. Can they be any less entitled to their share of a so-called settlement?

If Missouri courts are going to either close their eyes to distributing $600,000 of probate assets differently than the testa-trix intended, or, are going to approve the redistribution of the estate following pro-bate in a manner not possible in probate,

then God Save Us From Probate! Follow-ing this opinion, who would risk leaving their estates to charity if our courts are going to approve redistribution of the as-sets to claiming relatives after probate is closed.

The principal opinion, I would suggest, stands as a monument to the perils of probate.

This cause should be reversed and re-manded.

The purported dismissal of appellant Newmans should be set aside and vacated. If, after remand, the dismissal of the action then is consented to by "all parties not (then) in default," § 473.083.8, and the ap-propriate order is made directing the pro-bate of the original will, § 473.083.9, then, I submit, there can be no issue remaining in the case to be the subject of settlement. I would add this caveat. Settlements are to resolve ambiguities in wills. Beware of settlement agreements which suggest the redistribution of assets in a manner sub-stantially different than that intended by the testator, and, be especially wary of conspiracies to distribute assets after pro-bate in a manner that they could not be distributed in probate.

### EXHIBIT A

#### Order

On this 20th day of January, 1983, this Court is presented with a Settlement and Release Agreement made and entered into by and among plaintiffs, St. Louis Universi-ty, The Boatmen's National Bank of St. Louis, N.A., and Mercantile Trust Compa-ny, N.A., as Executor of the Estate of Clara A. Drefs, Deceased, Estate No. 62615; and the Court being familiar with

the evidence herein which has been adduced by deposition and having read and considered the pleadings and representations of counsel, the Court hereby approves the terms and provisions of the Settlement Agreement and Release pursuant to Section 473.084, RSMo.

The Court hereby accepts plaintiffs' voluntary dismissal of this action with prejudice pursuant to Section 473.083.8, RSMo., and orders that this action is dismissed with prejudice, costs in this action to be taxed against St. Louis University.

The Court further orders that a copy of this Order be filed with the Probate Division, Circuit Court of the County of St. Louis, State of Missouri, for inclusion in the file in the Estate of Clara A. Drefs, Deceased, Estate No. 62615 and that said Probate Division may proceed with the probate of said Estate.

S/ Robert G.J. Hoester, Judge

## SETTLEMENT AND RELEASE AGREEMENT

This Agreement, made and entered into by and among AZADIA MAMOULIAN, JOHN CAMMACK, ROBERT CAMMACK, WILLIAM CAMMACK, DAVID CAMMACK and THOMAS CAMMACK (collectively referred to as "Plaintiffs"), Executor of the Estate of Clara A. Drefs, deceased (the "Executor"), and THE BOATMEN'S NATIONAL BANK OF ST. LOUIS (referred to herein as "Boatmen's");

WITNESSETH:

WHEREAS, Clara A. Drefs died a resident of St. Louis County, Missouri, on January 18, 1979. That on or about the 1st day of February, 1979, there was admitted to Probate Court in the County of St. Louis, Missouri, the Last Will and Testament of said Clara A. Drefs dated May 24, 1976, and Codicils dated March 11, 1977, March 27, 1977 and August 14, 1978; (collectively referred to as the Will), Cause No. 62615.

WHEREAS, Plaintiff, Azadia Mamoulian, sister and heir at law of said deceased, along with John Cammack, Robert Cammack, William Cammack, David Cammack and Thomas Cammack, nephews and heirs at law of said deceased, did institute in the Circuit Court of St. Louis County, Missouri, Cause No. 423340, a suit in the nature of a Will Contest for the purpose of having the Will and Codicils admitted to Probate declared to be invalid, null and void and determined not to be the Last Will and Testament of Clara A. Drefs, deceased; and

WHEREAS, each of the legatees named in the Will were joined as Defendants in the Action and S.L.U. has asserted that the Will is the true Last Will and Testament of Clara A. Drefs; and

WHEREAS, the parties hereto are desirous of settling and compromising their disputes, claims and causes of action which Plaintiffs have or may have, and that the Will will be probated in the Circuit Court of St. Louis County, Missouri, Probate Division pursuant to the terms thereof.

Now, therefore in consideration of the mutual promises and covenants contained herein the parties hereto agree as follows;

1. Plaintiffs shall dismiss their Will Contest Suit, with prejudice, and this Settlement Agreement and Release will be submitted to Division 8 of the Circuit Court of St. Louis County, State of Missouri for approval pursuant to Section 473.083.8, RSMo. The parties will submit to the Court an Order in the form attached hereto

as Exhibit A and request the Court's entry of said order. Said order will be forwarded to the Probate Division of the Circuit Court St. Louis County and a copy filed in the Estate.

2. Mercantile Trust, now acting as Administrator, P.D.L., shall act as Executor of the Probate Estate.

3. Immediately and concurrently after the appointment as Executor, said Executor shall seek from the Probate Court an Order of Partial Distribution of One Million ($1,000,000.00) Dollars for Distribution to S.L.U. and an Order of Partial Distribution of all the personal property of Clara A. Drefs to be distributed to S.L.U., and an Order of Partial Distribution pursuant to which all specific bequests will be paid.

4. Within Thirty (30) days after the Order of Distribution, S.L.U. will pay to David G. Lupo, P.C., Attorney for the Plaintiffs the sum of Two Hundred Thousand ($200,000.00) Dollars for Attorney Fees and will pay to the Plaintiffs the sum of Four Hundred Thousand ($400,000.00) Dollars. Azadia Mamoulian shall disclaim any interest in the Unitrust set forth in the Codicil dated March 11, 1977 in the form attached hereto as "Exhibit B" as partial consideration for payment of One-Half (½) of the total amount paid to the Plaintiffs as set forth herein. Until payment is made, said Plaintiffs shall have a lien upon all of the assets of the Estate of Clara A. Drefs.

5. S.L.U. shall distribute certain personal property to Plaintiffs, as they may designate, as set forth in Exhibit "C" attached hereto. S.L.U. shall notify David G. Lupo as Attorney for Plaintiffs of its receipt of said items of personality and will make arrangements to transfer said property to Plaintiffs. Plaintiffs agree they will arrange for said items to be picked up from S.L.U. or from where said items are being stored and they shall pay all costs of pick-ing up said property, of having said property uncrated and crated and delivered to their respective residences. In the event that Plaintiffs choose to store said items after their receipt thereof, Plaintiffs further agree to pay all warehouse charges for said storage.

6. S.L.U. and the Executor of the Estate of Clara A. Drefs shall be liable for all the Estate, Inheritance, Transfer, Legacy, or succession taxes or Death Taxes which may be assessed or imposed with respect to the Estate of Clara A. Drefs or Plaintiffs herein by reason of the payment by S.L.U. to the Plaintiffs and their said Attorney, and by reason of the disclaimer made by Azadia Mamoulian, as set forth in paragraph four (4) above. Said payments shall be made as an expense of the administration and without contribution or reimbursement. All taxable Court Costs incurred by reason of the Will Contest Suit, Cause No. 423340, and taxed by the Clerk, shall be borne by S.L.U.

7. Plaintiffs do hereby release S.L.U., the Executor and Boatmen's, and S.L.U., the Executor and Boatmen's do hereby release the Plaintiffs, individually and in all capacities, their respective spouses, heirs, executors, administrators, successors and assigns and anyone claiming through or under them from any and all manner of claims and demands which they may have or claim to have or be entitled to; and Plaintiffs do further release S.L.U., the Executor and Boatmen's, and said S.L.U., the Executor and Boatmen's do hereby release the Plaintiffs from all claims or demands, causes of action, known, unknown, disclosed or undisclosed that they may have or believe they have and do hereby release and discharge the other from all further liability or responsibility except as provided for by this Agreement and hereby agree to indemnify and hold harmless the other from any claims or demands whatsoever, including but not limited to: 1) the

Will or any other Will or Codicils executed by Clara A. Drefs during her life; 2) Any Trust created during the life of Clara A. Drefs or created by her Will; 3) Any Trust of which Clara A. Drefs was a beneficiary during her life; and/or 4) any matter which was raised, or could have been raised, in any of the Pleadings in or documents related to the action or the Estate.

8. Each of the parties acknowledges that this Agreement contains the entire agreement between the parties; that no representations, promises or agreements not herein expressly set forth have been made by either party to induce the other to enter this Agreement, and that this Agreement is intended to be and is a complete settlement of all rights, claims and demands whatsoever, both known and unknown, disclosed or undisclosed, which Plaintiffs may have against S.L.U., the Executor and Boatmen's, or that S.L.U. the Executor and Boatmen's shall have against Plaintiffs.

9. All of the parties hereto agree that they will, upon reasonable request execute and deliver any and all further instruments or documents which may be required to effectuate the provisions of this Settlement Agreement and Release.

10. It shall be agreed that all parties shall execute copies of this Agreement and all attachments hereto. This Agreement may be executed in counterparts, so that each individual Plaintiff and other parties herein shall have a copy thereof, each of which will be deemed an original, but which together will constitute one and the same instrument, and shall be binding on all parties hereto in the same manner as though each copy had been executed by all the parties hereto.

11. The parties state that they have entered into this Agreement with the understanding that each and every provision thereof is being relied upon by all of them as a basis for their agreement and they would not have signed the same except for the sum total of its provisions.

12. This Settlement Agreement and Release shall be construed and enforced in accordance with the Laws of the State of Missouri.

13. In the event that an Order is not obtained approving this Settlement Agreement and Release as set forth above this Settlement Agreement and Release shall not take effect, but upon happening of such an event, shall become null and void so that the parties hereto shall continue with the same rights, respectively, as if this Settlement Agreement and Release had not been made; otherwise, this Settlement Agreement and Release remains in full force and effect and each of the terms and provisions herein set forth and made or agreed upon.

14. The Settlement Agreement and Release shall be binding upon and enure to the benefit of the parties and their respective heirs, personal representatives, executors, administrators, successors and assigns.

IN WITNESS WHEREOF St. Louis University has executed this Settlement Agreement and Release, having read and fully understood the provisions hereof.

s/ St. Louis University

s/Attorney

IN WITNESS WHEREOF Mercantile Trust Company, N.A. has executed this Settlement Agreement and Release, having read and fully understood the provisions hereof.

s/Mercantile Trust Co. N.A.

s/Attorney